UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES LEE,                                  :
      Plaintiff,                        :
                                        :
      v.                                :   Case No. 3:21CV399 (KAD)
                                        :
ROLLIN COOK, et al.,                        :
      Defendants.

## INITIAL REVIEW ORDER

    Plaintiff James Lee, a sentenced inmate housed at Osborn Correctional Institution

("Osborn") within the Connecticut Department of Correction ("DOC"), filed this civil rights

action against Governor Lamont, former Commissioner Cook, former Osborn Warden Nick

Rodriguez; Deputy Warden Hines; Deputy Warden Nicole Thibault; Industries and Commissary

Head James Giglione; Captain Perez, Industries Manager Ray Munroe, Industries Supervisor

Syed Husein, and Retired Laundry Supervisor Ranee Blondin, alleging various constitutional

violations. He seeks both damages and declaratory and injunctive relief. Compl. ECF No. 1 at

17. For the following reasons, certain of the Plaintiff's claims are dismissed while others shall

proceed beyond initial review.

**STANDARD OF REVIEW**

    Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against

governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or

fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a

defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure

requires that a complaint contain "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**ALLEGATIONS**

On March 12, 2020, Warden Rodriguez made a declaration that Governor Lamont had declared a State of Emergency due to the COVID-19 pandemic. Compl. at ¶ 14. Inmates were informed that they would be eating in their units, and programs and visits were cancelled. *Id.*

At that time, Plaintiff was working in the Osborn Laundry facility (he continues to work at this job). *Id.* at ¶ 15. However, he was not provided with personal protective equipment ("PPE") for COVID-19, although he made a request for this equipment to Warden Rodriguez, Deputy Hines, and Deputy Thibeault on March 16, 2020. *Id.* at ¶ 16. He also made a request to Defendant Munroe, who responded that DOC did not have any PPE supplies. *Id.* Plaintiff did not receive a proper safety gear Tyvek suit from March 12 to May 24, 2020. *Id.*

On April 3, Deputy Warden Thibeault removed everyone from the Industries dining hall except the Laundry workers. *Id.* at ¶ 17. After Deputy Warden Thibeault and Captain Perez informed the Laundry workers that they were moving from H-Block to E-Block, Plaintiff asked them why they were moving the Laundry workers to a dangerous situation and noted that some of the workers had underlying illnesses. *Id.* at p 6. Thibeault stated that "we are aware of things and have addressed them." Thibeault and Perez also assured the inmates that the cells were "spi[c] and span." *Id.*

On that day, Plaintiff was moved to a cell without a window and poor ventilation in E-Block. *Id.* at ¶ 18. Thibeault told him that he would be placed in segregation and lose his job and housing if he refused to move. *Id.* All Laundry workers were moved to E-Block where the cells were filthy. *Id.* at ¶ 19.

During the weekend, individuals were coughing and throwing up; Kitchen workers were brought to the hospital and were also being moved throughout the facility. *Id.* at ¶ 20. On April 5, H-Block was quarantined. *Id.* at ¶ 21.

On April 6, 2020, Plaintiff complained to Warden Rodriguez about the Kitchen workers and told him there should be a quarantine for the block but he refused. *Id.* at ¶ 22. Inmates continued to become sick; certain staff members walked around with no masks; and Kitchen workers tested positive for COVID-19. *Id.* at ¶ 23-24.

On April 25, Laundry workers started to become sick but were not provided with proper PPE. *Id.* at ¶ 27. The Laundry workers were informed that they would be quarantined on April 30, 2020 by Warden Rodriguez in F-Block. *Id.* at ¶¶ 29-32, 37.

3

The replacement Laundry crew members received PPE for an entire month from April 30, 2020 to May 30, 2020. *Id.* at ¶¶ 33, 43.

The Laundry workers returned to work with cloth masks; as they were returning to E-Block, Warden Rodriguez told the Laundry workers to pack their stuff. *Id.* at ¶ 46.

On May 7, the Laundry workers all tested positive and were transferred to Northern Correctional Institution ("Northern"). *Id.* at ¶¶ 39, 40, 47. Plaintiff was told to pack a 14-day bag and was escorted to the Hospital. *Id.* at ¶ 48.

On May 8, he was transferred to Northern for twelve days. *Id.* at ¶ 49.

During 21 days of quarantine (including 12 days at Northern), the Laundry workers had not been permitted showers. *Id.* at ¶ 41. Between April 30 to May 20, Plaintiff was not permitted to shower, and the cells for the Laundry workers were filthy and not disinfected. *Id.* at ¶¶ 51-52.

After he returned to Osborn on May 20, he was placed back in F-Unit to the same cells that the infected Laundry workers had left, but the cells had not been decontaminated or even cleaned. *Id.* at ¶¶ 41, 50. Officers refused to provide cleaning supplies. *Id.* at ¶ 41. On May 21, Plaintiff observed inmates doing laundry in N-95 masks, shields, and Tyvek suits. *Id.* at ¶ 43.

On May 30, all Laundry workers returned to the H-Block unit at Osborn where the cells were not disinfected until June 3. *Id.* at ¶¶ 53-54.

On June 1, 2020, Laundry workers went back to work, and Defendant Blondin provided N-95 masks, shields and Tyvek suits, which were the same suits the replacement workers previously wore. *Id.* at ¶ 55. However, Defendants Munroe and Blondin later stopped providing PPE safety equipment to the Laundry workers. *Id.* at ¶ 56. When the workers returned to their cells in H-Block, the cells were not disinfected until June 3. *Id.* at ¶ 54.

On June 3, Laundry workers were ordered to cover their property in the housing units because the cells would be sanitized and decontaminated for the first time during the pandemic. *Id.* at ¶ 55.

Plaintiff was allegedly subjected to the punishment of housing him in the oppressive conditions of solitary confinement at Northern due to his falling ill. *Id.* at ¶¶ 61-63. He alleges that such conditions "jeopardized his wellbeing" and posed a particular danger to inmates with COVID-19 as they were housed in a non-medical restrictive housing unit at Northern. *Id.* at ¶¶ 63-66.

Plaintiff alleges that Defendants failed to establish sufficient directives to address the pandemic. *Id.* at ¶ 57-60.

Plaintiff asserts that release of inmates is an appropriate intervention to address the problem of COVID-19 in prisons. *Id.* at ¶ 67.

**DISCUSSION**

Plaintiff's complaint asserts Eighth Amendment deliberate indifference claims; First Amendment retaliation claims, and Fourteenth Amendment equal protection claims.

### Claims on Behalf of other Inmates

The Court first observes that Plaintiff appears to asserts claims on behalf of other inmates. This is not permitted. As a self-represented party, Plaintiff does not have standing to sue for harms caused to others. See *Singleton v. Wulff*, 428 U.S. 106, 114 (1976) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party") (internal quotation marks and citations omitted). In addition, a litigant in federal court has a right to act as his own counsel pursuant to 28 U.S.C. § 1654, but as a non-attorney, has no authority to

appear as counsel for others. *See United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008) ("[A]n individual who is not licensed as an attorney may not appear on another's behalf in the other's cause."); *Eagle Assocs. v. Bank of Montreal,* 926 F.2d 1305, 1308 (2d Cir. 1991) (Section 1654 "does not allow for unlicensed laymen to represent anyone else other than themselves") (internal quotation omitted). Accordingly, Plaintiff's complaint will be construed as brought solely on his own behalf.

**Eighth Amendment**[1]

Preliminarily, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).[2] The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted). In order to "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).

To state an Eighth Amendment claim for unconstitutional conditions of confinement, Plaintiff must allege facts supporting an objective element—that "the deprivation was

---

[1]  Because claims brought by a sentenced prisoner are considered under the Eighth Amendment, the court will dismiss any Fourteenth Amendment claims based on his conditions of confinement or deliberate indifference to his health or safety. *See Darnell v. Pineiro*, 849 F.3d 17, 29-34 & n.9 (2d Cir. 2017).

[2]  Plaintiff has not alleged any direct personal involvement of Defendants Husein or Giglione in this or any of the alleged constitutional violations. Accordingly, these defendants are dismissed from this action.

sufficiently serious that he was denied the minimal civilized levels of life's necessities"—and a subjective element—that the defendants "acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)) (internal quotation marks omitted). To satisfy the subjective component, Plaintiff must allege that the defendants knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Phelps v. Kapnolas*, 308 F.3d 180, 185096 (2d Cir. 2002) (defendant must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] and ... dr[ew] that inference"). On this issue, Plaintiff must show that each defendant (including supervisory officials) through his own actions, violated his rights. He must show that each defendant was personally aware of and disregarded an excessive risk to his health or safety.

As to the objective component, there is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *Lewis v. Siwicki*, 994 F.3d 427, 432 (2d Cir. 2019). The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *i.e.*, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). The court makes this determination in light of the steps the facility has already taken to mitigate the danger. *Id.*

**Inadequate Response to COVID-19**

Plaintiff alleges that he was not provided with adequate PPE despite his requests, that inmates were moved around the facility who could expose other inmates to COVID-19, and that inadequate quarantine steps were taken to safeguard him from exposure to COVID-19.

"[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). Courts have found that "an inmate can face a substantial risk of serious harm in prison from COVID-19 if a prison does not take adequate measures to counter the spread of the virus." *Chunn v. Edge*, 465 F. Supp. 3d 168, 200-01 (E.D.N.Y. 2020) (citing cases). For initial review purposes only, Plaintiff's allegations identify a sufficiently serious condition or deprivation.

Here, construing the allegations most favorably, the court concludes Plaintiff has sufficiently alleged deliberate indifference by Warden Rodriguez, Deputy Warden Hines, Deputy Warden Thibeault, Industries Manager Munroe, Laundry Supervisor Blondin, and Captain Perez by failing to take adequate measures to safeguard Plaintiff from exposure to COVID-19.

Plaintiff has not, however, asserted any factual allegations that former Commissioner Cook and Governor Lamont were aware of the substantial risk of harm to Plaintiff but failed to take any steps to mitigate the risk to Plaintiff's health or safety. While he identifies allegedly deficient policies instituted by former Commissioner Cook in response to the COVID-19 pandemic, Plaintiff has not alleged that Cook had any subjective knowledge that these policies posed a risk of harm to Plaintiff specifically. *See Tangreti*, 983 F.3d at 616 ("[F]or deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it.").

**Cell Conditions**

Plaintiff alleges that he was forced to live in cells that were unsanitary, had inadequate ventilation and were isolating in violation of the Eighth Amendment.

The Second Circuit has "long recognized that unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment.'" *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013). Unsanitary conditions have satisfied the objective element where "the area in front of a prisoner's cell is filled with human feces, urine, and sewage water, … a prisoner's cell is fetid and reeking from the stench of the bodily waste from the previous occupants, … a prisoner's cell floor has urine and feces splattered on the floor." *McFadden v. Noeth*, 827 F. App'x 20, 29 (2d Cir. 2020) (summary order) (citations and quotations omitted). The Second Circuit has rejected "any bright-line durational requirement for a viable unsanitary-conditions claim[,]" although the Court instructed that whether a claim states a constitutional deprivation "depends on both the duration and severity of the exposure." *See Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015) (reversing district court's dismissal for failure to state an Eighth Amendment conditions of confinement claim where inmate plaintiff alleged that while kept naked in a strip cell, he was exposed, at a minimum, to seven days of human waste). As the Second Circuit explained:

> Where, for example, an exposure to human waste lasts merely ten minutes, but that exposure takes the form of working in a well while facing "a shower of human excrement without protective clothing and equipment," a jury may find an Eighth Amendment violation. *See Fruit v. Norris,* 905 F.2d 1147, 1151 (8th Cir.1990). Spending three days in that well was not required to state a claim. Likewise, a less severe exposure may be constitutionally permissible if rectified in short order but may become cruel and unusual with the prolonged passage of time. *See McCord [v. Maggio],* 927 F.2d [844,] 846–47 [(2d Cir. 1991)](holding that occasional sewage backup onto cell floor on which inmate slept over two-year period, among other conditions, violated Eighth Amendment).

9

*Id.*

Plaintiff's complaint explains that the lack of a window to provide ventilation in the E-Block cell enabled the COVID-19 virus to "come right in" or spread more easily. Compl. at p. 6. Although Plaintiff's allegations are somewhat sparse, the Court will assume for initial review purposes that the E-Block cell (the filthy condition and poor ventilation), F-Block (not disinfected and no cleaning supplies), the Northern cell conditions (isolating, filthy and not disinfected) and his H-Block cell conditions (not disinfected upon Plaintiff's return) posed a severe risk of serious harm, particularly in light of the need for sanitary conditions to prevent the spread of COVID-19.

Relevant to the Defendants' state of mind, Plaintiff has sufficiently raised an inference that Defendants Deputy Warden Thibeault and Captain Perez were aware of the conditions in the E-Block but acted with deliberate indifference to the risk of harm posed by those conditions. However, Plaintiff has not alleged facts indicating that any Defendant was aware that his cells at Northern or in H-Block posed a substantial risk of serious harm to him due to unsanitary or isolating conditions. Thus, the Court will permit Plaintiff's Eighth Amendment unsanitary cell conditions and inadequate ventilation claim to proceed against Deputy Warden Thibeault and Captain Perez regarding his cell in E-Block, but dismisses all other claims about unsanitary and/or isolating cell conditions as not plausible under 28 U.S.C. § 1915A(b).

**Lack of Showers**

Inmates have a right to sanitary living conditions and the necessary materials to maintain adequate personal hygiene. *See Walker v. Schult,* 717 F.3d 119, 127 (2d Cir. 2013) (citing cases for the proposition that "the failure to provide prisoners with toiletries and other hygienic materials

10

may rise to the level of a constitutional violation"). District courts in the Second Circuit have held that a temporary denial of access to a shower does not rise to the level of a serious deprivation of a human need. *See Rogers v. Faucher*, No. 3:18-cv-01809 (JCH), 2019 WL 1083690, at *5 (D. Conn. Mar. 7, 2019) (6-day deprivation of shower use did not constitute sufficiently serious deprivation of a human need); *George v. McGinnis*, 2008 WL 4412109, at *4–5 (W.D.N.Y. Sept. 23, 2008) (deprivation of showers for thirteen days does not satisfy the objective element of an Eighth Amendment claim); *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) (dismissing Eighth Amendment claims as insufficient under the objective test because "a two-week suspension of shower privileges does not suffice as a denial of 'basic hygienic needs'") (quoting *Cruz v. Jackson,* No. 94 Civ. 2600 (RWS), 1997 WL 45348, at *7 (S.D.N.Y. Feb. 5, 1997) (holding denial of showers for two weeks, after which inmate plaintiff was permitted only cold showers, does not state Eighth Amendment claim based on conditions of confinement)); *Waring v. Meachum*, 175 F. Supp. 2d 230, 241-42 (D. Conn. 2001) ("[T]he prohibition of showers and failure to provide a change of clothing during the seven day lockdown period does not demonstrate that plaintiffs were deprived of a minimum civilized level of life's necessities.").

Plaintiff alleges that he lacked access to a shower during his quarantine confinement during a 21-day period. For purposes of initial review, the Court considers Plaintiff's allegations to be sufficient to establish an objectively serious deprivation. This time period is longer than was the case in the cases cited above and maintaining hygiene was acutely important during the pandemic.

As to the subjective element, Plaintiff has not specifically alleged that he complained to any defendant about his lack of showering. Plaintiff's allegations indicate that he was ordered into quarantine during that period by Warden Rodriguez. Compl. at ¶¶ 37, 46. Thus, the Court

concludes that it is a plausible inference that Warden Rodriguez knew that Plaintiff would be subjected to at least a period of nearly three weeks of shower restriction during his quarantine. Construing the complaint most broadly, the Court permits this claim to proceed against Warden Rodriguez. The Court dismisses this claim as not plausibly alleged as to all other Defendants.

**Lack of Medical Care**

Plaintiff's complaint also raises a claim that he was not provided with adequate medical care after he contracted COVID-19 and was forced to be housed at Northern. Compl. at ¶¶ 65-66.

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). To state such a claim, the Plaintiff must allege an objectively "sufficiently serious" deprivation. *Id.* The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted). "A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

The defendants also must have been "subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. *See Green v. McLaughllin*, 480 F. App'x 44, 48 (2d Cir. 2012). "[A]n official's failure to alleviate a significant

risk that he should have perceived but did not" does not constitute deliberate indifference. *Farmer*, 511 U.S. at 838.

Plaintiff's contraction of COVID-19 presents a sufficiently serious illness to satisfy the objective element of this claim. As to the Defendants' *mens rea,* Plaintiff only alleges that Warden Rodriguez ordered him to quarantine at Northern after he tested positive for COVID-19. This is inadequate, standing alone, to support the inference that Rodriguez knew about a risk of harm to Plaintiff by placing him in isolation at Northern while ill with COVID-19 and disregarded that risk. Indeed, the Complaint does not address with any detail the medical care that the Plaintiff did, or did not, receive, nor any conduct by any named Defendant in that care. Accordingly, this claim is dismissed as to all Defendants.

### First Amendment Retaliation

Plaintiff alleges that the Laundry workers were retaliated against for complaining about their conditions.

"To prevail on a First Amendment retaliation claim, a plaintiff must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019).

Protected speech or activity includes, for example, filing a lawsuit, an administrative complaint, or a prison grievance. *See id* ("The filing of prison grievance is protected activity"); *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). Although, not all oral speech by an inmate constitutes protected activity, some courts within the Second Circuit have determined that verbal or oral complaints about the conduct of prison officials or conditions of confinement may

constitute protected speech in the context of a First Amendment retaliation claim. *See McIntosh v. United States,* No. 14-CV-7889 (KMK), 2016 WL 1274585, at *26 (S.D.N.Y. Mar. 31, 2016) (collecting cases).

"An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Brandon*, 938 F.3d at 40 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). In order to allege causation, the inmate must state facts "suggesting that the protected conduct was a substantial or motivating factor in the [defendant's] decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)).

Courts treat prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (citation omitted). Consequently, the Second Circuit has required that prisoner retaliation claims "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan*, 794 F.3d at 295 (internal quotations and citation omitted).

Here, Plaintiff has alleged his retaliation claim in "wholly conclusory terms" rather than with "specific and detailed factual allegations." *Id.* Accordingly, Plaintiff's retaliation claims are dismissed as not plausibly alleged.

**Equal Protection**

Plaintiff claims that the replacement Laundry worker received PPE but that he had not

received PPE prior to his quarantine.

To state an equal protection claim, a plaintiff must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980).

When a suspect classification is not at issue, as here, the Equal Protection Clause still requires that individuals be treated the same as "similarly situated individuals." *Fortress Bible Church v. Feiner,* 694 F.3d 208, 222 (2d Cir. 2012). Thus, a plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain*." Witt v. Village of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 639 F. App'x 44 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

Here, Plaintiff has not alleged facts indicting that the replacement Laundry workers were

so similarly situated to him as to render his treatment irrational. Indeed, he alleges that the replacement workers were provided with the PPE in April 2020 further into the pandemic, while Plaintiff had requested PPE in mid-March at its outset. Accordingly, Plaintiff's allegations do not raise an inference that Plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose is all but certain. To the extent that Plaintiff intended to assert an equal protection claim, the claim is dismissed.

**Official Capacity Claims**

Plaintiff requests injunctive relief and a declaratory judgment against Defendants in their official capacities. Compl. at p. 32. Specifically, he seeks a declaration that Defendants have violated his rights under the United States Constitution; and an injunctive order for Defendants to provide him with a vaccination and release from prison. *Id.*[3]

Plaintiff may proceed against a state official in his or her official capacity to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). In *Ex parte Young*, the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d

---

[3] Any claims for money damages against the defendants in their official capacities, if intended, are dismissed as barred by the Eleventh Amendment. *See, e.g. Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

612, 617 (2d Cir. 2007). However, the exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993). In determining whether *Ex Parte Young* applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted).

1.     Declaratory Judgment

Plaintiff's request for a declaratory judgment that Defendants have violated his constitutional rights in the past must be dismissed as barred by the Eleventh Amendment. *See Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief."). Furthermore, if Plaintiff were to prevail on his constitutional claims, the Court necessarily would determine that his constitutional rights had been violated. Thus, a separate award of declaratory relief is unnecessary. Accordingly, the request for a declaratory judgment is dismissed as not plausible. *See* 28 U.S.C. § 1915A(b)(1).

2.     Injunctive Relief

For purposes of this initial review order, the Court concludes that Plaintiff's request for an injunction ordering that he be vaccinated seeks prospective relief for the alleged ongoing Eighth Amendment violations. Accordingly, Plaintiff may proceed with a request against current Commissioner Quiros (rather than former Commissioner Cook) who plausibly could afford him such relief. *See* Fed. R. Civ. P 25(d) ("An action does not abate when a public officer who is a party in an official capacity ... ceases to hold office while the action is pending[,] [and] [t]he

17

officer's successor is automatically substituted as a party.").

However, Plaintiff's request for release from prison is dismissed. A state prisoner seeking relief in federal court can challenge the duration of his confinement only by petition for writ of habeas. *Preiser v. Rodriguez*, 411 U.S. 475, 487–90 (1973) (holding that a state prisoner challenging the length of confinement and requesting immediate release must do so by a habeas petition, not by a section 1983 suit); *Murphy v. Travis*, 36 F. App'x 679, 681 (2d Cir. 2002) (state prisoner's request for injunctive relief in section 1983 case was "tantamount to seeking relief from confinement and is thus barred by the Supreme Court's decision in *Preiser*"). The court lacks authority to grant such injunctive relief for release in this action under 42 U.S.C. § 1983.

## ORDERS

(1) The case shall proceed on Plaintiff's Eighth Amendment claims against Warden Rodriguez, Deputy Warden Hines, Deputy Warden Thibeault, Industries Manager Munroe, Laundry Supervisor Blondin, and Captain Perez in their individual capacities for deliberate indifference to Plaintiff's health and safety for failure to safeguard him from exposure to COVID-19; his Eighth Amendment claims against Deputy Warden Thibeault and Captain Perez in their individual capacities based on deliberate indifference to his cell conditions in E-Block; and his Eighth Amendment claim against Warden Rodriguez in his individual capacity for deliberate indifference to Plaintiff's lack of access to showering. Plaintiff's Eighth Amendment official capacity claim for an injunctive order that Plaintiff be vaccinated for COVID-19 may proceed against Commissioner Quiros. The clerk shall add Commissioner Quiros to the case as a defendant in his official capacity. All other claims and Defendants are DISMISSED without prejudice to Plaintiff filing an amended complaint to correct the deficiencies of his claims as identified in this

order. Plaintiff is informed that any amended complaint will completely replace his previously filed complaint, and no portion of any prior complaint shall be incorporated into his amended complaint by reference. If Plaintiff files an amended complaint, he must name all of the defendants in the case caption.

(2) The clerk shall verify the current work address of former Warden Rodriguez, Deputy Warden Hines, Deputy Warden Thibeault, Industries Manager Munroe, Laundry Supervisor Blondin, and Captain Perez with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint [ECF No. 1] to them at their confirmed addresses on or before **August 10, 2021**, and report on the status of the waiver request on the thirty-fifth (35th) day after mailing. If a defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall prepare a summons form and send an official capacity service packet, including the complaint and this Initial Review Order on the United States Marshal Service. The U.S. Marshal is directed to effect service of the complaint on defendant Commissioner Angel Quiros in his official capacity at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, on or before **August 10, 2021** and file a return of service on or before **August 20, 2021.**

(4) The clerk shall send a courtesy copy of the complaint [ECF No. 1] and this Order to the DOC Office of Legal Affairs and to the Connecticut Attorney General.

(5) The defendants shall file a response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of

19

summons forms are mailed to him. If the defendants choose to file an answer, defendants shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **January 20, 2022**. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed by **February 20, 2022**.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicating all of the case numbers in the notification of change of address. He should also notify the defendant or defense counsel of his new address.

(11) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L.

Civ. R. 5(f). Therefore, discovery requests must be served on defendant's counsel by regular mail.

**SO ORDERED** this 20th day of July 2021 at Bridgeport, Connecticut.

_/s/_____

Kari A. Dooley
United States District Judge